Filed 8/21/24  P. v. Martinez CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>FELIPE FERNANDO MARTINEZ,<br><br>     Defendant and Appellant. | B327434<br><br>Los Angeles County<br>Super. Ct. No. VA154565 |

APPEAL from an order of the Superior Court of Los Angeles County, Roger Ito, Judge. Affirmed.

Paul Kleven, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Stephanie C. Brenan and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant and appellant Felipe Fernando Martinez of murdering a rival gang member and being a felon in possession of a firearm. Martinez pled no contest to charges arising from a separate incident in which he led police on a high-speed car chase. The trial court sentenced Martinez to 30 years to life plus 15 years and 4 months in state prison. On appeal, Martinez argues the trial court prejudicially abused its discretion by admitting testimony regarding his gang affiliation. He also raises various challenges to the sentence the trial court imposed. We affirm.

# PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed an amended information charging Martinez with murder (Pen. Code,[1] § 187; count one); two counts of possession of a firearm by a felon (§ 29800, subd. (a)(1); counts two and four); recklessly fleeing a peace officer (Veh. Code, § 2800.2; count three); driving with a blood alcohol concentration of 0.15 percent or more (Veh. Code §§ 23152, subd. (b), 23578; count five), and driving under the influence of alcohol (Veh. Code, § 23152, subd. (a); count six). On count one, the amended information alleged Martinez personally and intentionally discharged a handgun, proximately causing great bodily injury or death. (§ 12022.53, subds. (b), (c), (d) & (e)(1).) It also alleged Martinez had sustained a prior strike conviction. (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d).)

Martinez pled no contest to counts three through six. The jury found him guilty on counts one and two. It also found true

---

1    All further undesignated statutory references are to the Penal Code unless otherwise specified.

several of the firearm use allegations attached to count one. (§ 12022.53, subds. (b), (c), & (d).) It additionally found true the following aggravating sentencing factors: (1) the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty viciousness, or callousness; (2) Martinez was armed with and used a weapon; and (3) Martinez engaged in violent conduct indicating a serious danger to society. Martinez admitted the prior strike conviction allegation was true.

The trial court sentenced Martinez to 30 years to life plus 15 years and 4 months in state prison, consisting of 15 years to life on count 1, doubled based on the prior strike, plus a 10-year firearm enhancement (§ 12022.53, subd. (b)); 4 years on count 3, consisting of a doubled two-year middle term; and 16 months on count 4, consisting of one-third the middle term doubled. The trial court either sentenced Martinez concurrently or stayed sentencing under section 654 on the remaining counts.

Martinez timely appealed.

## FACTUAL BACKGROUND

The parties are familiar with the facts underlying Martinez's convictions, so we need not recount them in great detail. (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion reviewing the correctness of trial court's decision "does not merit extensive factual or legal statement"].) We instead provide the following brief summary.

### A. Prosecution Evidence

Evett Fazekas was in high school when she met Carlos Solis. Although they never had an "official" dating relationship, Fazekas considered Solis her boyfriend because they "did

3

everything that [ ] couple[s] do[ ] together." By June 2020, Fazekas and Solis had known each other for almost two years. Fazekas knew Solis was associated with a criminal street gang called Fraser Maravilla.

On June 20, 2020, a few minutes before 9:15 p.m., Fazekas and Solis went to Marlow Park in Bell Gardens. They sat on a bench where they were planning to smoke marijuana together. Soon after they arrived, Martinez approached them holding a beer cup with a michelada. Martinez asked Solis where he was from and if he knew where he was. Solis replied he was from Fraser Maravilla and knew exactly where he was. Martinez loudly and angrily said he was from Walnut Gang.

Solis took off his shirt. Martinez put down his cup and punched Solis in the face. The two men fought on the ground with Martinez on top of Solis. Fazekas grabbed Martinez's beer cup and threw it at Solis. Solis was then able to get on top of Martinez, and Fazekas repeatedly kicked Martinez in the head. Martinez pulled a revolver from his waistband.

Fazekas and Solis started to run away in different directions. Solis sprinted toward a fence, and Martinez sprinted after him. As Solis tried to jump over the fence, Martinez shot him. Solis fell to the ground on the other side of the fence. Martinez fired five more shots. Fazekas stood there, unable to believe what had happened. Martinez ran away. Fazekas jumped over the fence and tried to keep Solis awake. She banged on the door of a nearby house, and the occupants called the police. Fazekas went back to Solis. Eventually the police arrived. Solis died from multiple gunshot wounds.

Bell Gardens Police Detective Omar Perez testified as a gang expert. He testified, among other things, that Walnut Street

gang claimed various blocks of Bell Gardens as its territory, and considered Marlow Park to be its main location to gather. Walnut Street had no allies, so any other gang would be considered a rival. Detective Perez testified that, even if there is no history of violence between two gangs, a gang member coming into another's gang territory, and an exchange between gang members that began with "where are you from," could lead to a response ranging from "verbal altercation . . . [to] physical altercation to murder."

## B. Defense Evidence

Martinez testified in his defense. He testified he was an associate of Walnut Street gang. He was drunk, dizzy, and stumbling when he approached Solis and Fazekas. Solis was "mean mugging" Martinez by staring directly at him with an aggressive attitude. Martinez approached Solis and said "What are you doing here? Where are you from?" and "This is Walnut Gang. Do you know where you're at?" Solis responded he was from Fraser Maravilla. Solis was the first person Martinez had ever met from that gang. Martinez had no animosity toward that gang, and to his knowledge, neither did Walnut Street.

When Solis took off his shirt, Martinez believed a fight was about to happen, but was too intoxicated to defend himself. Solis swung at Martinez and hit him hard in the face. Martinez's vision went dark, then the next thing he knew he was lying on the ground and could feel repeated blows to his head. As Solis continued to punch Martinez, he told Martinez: "I have something for you." Martinez was afraid Solis was going to use a gun or some other weapon. Afraid for his life, Martinez pulled a .38 revolver from his waistband and fired a shot at Solis.

Solis got off Martinez and started running toward the street. Martinez knew gang members sometimes stash weapons in parks or cars, and he was afraid Solis was running to get a gun. Still feeling scared for his life, Martinez ran after Solis. As Solis jumped over a fence, Martinez was afraid Solis was going to grab a weapon from somewhere on the other side. Martinez fired five shots at Solis then ran away.

## DISCUSSION

### I. The trial court did not abuse its discretion by admitting gang evidence

Martinez argues the trial court prejudicially abused its discretion under Evidence Code section 352 by admitting gang evidence. The Attorney General counters the trial court's admission of the gang evidence was not arbitrary nor irrational, as the evidence was highly probative of Martinez's motive for the murder. We agree with the Attorney General.

#### A. Background

In a motion in limine, the prosecution sought to admit evidence of Martinez's "membership and association with the Walnut Street gang in order to prove motive [under] Evidence Code sections 210 and 1101(b)." The prosecution argued evidence of Martinez's gang affiliation was admissible under Evidence Code section 352 because the probative value would not be substantially outweighed by the danger of undue prejudice.

The trial court heard argument on the motion. The prosecution specified that in addition to evidence of Martinez's gang affiliation, it was seeking to admit testimony of police officers concerning Walnut Street's claim over Marlow Park, the meaning of gang graffiti in the park, and "what it means for

6

[Walnut Street] members when they come across a person who may be disrespectful to that gang's territory."

Martinez opposed the motion, arguing the gang evidence should be excluded. Specifically, defense counsel argued "any introduction of gang evidence would be highly prejudicial," especially given the absence of a gang allegation in the case.

The trial court granted the prosecution's motion in limine, explaining "the evidence of the [Martinez's] gang membership, of the victim's gang membership, [ ] [the] particular territory that's involved[,] and the statements that are uttered are admissible to show . . . motive." The court noted it "[did] not find it's more prejudicial than probative to allow that gang testimony in as evidence of motive."

Both parties agreed the jury should be instructed using CALCRIM No. 1403, regarding the limited purpose of the gang evidence. The court then instructed the jury:

> You may consider evidence of gang activity only for a limited purpose of deciding whether:

> The defendant had a motive to commit the crime charged in Count 1 and the lesser included crime to that charged in Count 1.

> You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime.

### B. Applicable Law

Under Evidence Code section 352, trial courts have the discretion to exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission

7

will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Evidence Code section 352 guards against the admission of "evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues." (*People v. Rucker* (2005) 126 Cal.App.4th 1107, 1119.)

We review for abuse of discretion a trial court's determination that evidence is admissible under Evidence Code section 352. (*People v. Doolin* (2009) 45 Cal.4th 390, 437.) "Under the abuse of discretion standard, 'a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Hovarter* (2008) 44 Cal.4th 983, 1004 (*Hovarter*).)

"'[E]vidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime.'" (*People v. Ramirez* (2022) 13 Cal.5th 997, 1095 (*Ramirez*).) "Such evidence is admissible even when a gang enhancement is not charged, provided the probative value of the evidence is not substantially outweighed by its prejudicial effect." (*Ibid.*) "Gang evidence is relevant and admissible when the very reason for the underlying crime, that is the motive, is gang

related." (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167.)

### C. Analysis

We conclude the trial court's admission of gang evidence was not an abuse of discretion. As the trial court correctly explained in granting the prosecution's motion in limine, the gang evidence was probative of Martinez's motive for committing the murder. It was undisputed at trial that Martinez killed Solis. The key issue in dispute was Martinez's reason for doing so. The prosecution's position was Martinez murdered Solis, and the murder was gang related. By contrast, Martinez testified in his defense that he had no gang-related reason to kill Solis, and that he killed Solis in self defense. Because the gang evidence was highly relevant to these central factual disputes at trial, it was not arbitrary nor irrational for the trial court to admit it under Evidence Code section 352. (See *Hovarter*, *supra*, 44 Cal.4th at p. 1004.)

We are unpersuaded by Martinez's suggestion that remand is warranted because the prosecution called a gang expert as its first witness. The prosecution may make its own tactical decisions regarding the order in which to present admissible evidence. Nor are we persuaded by Martinez's suggestion that remand is warranted because the gang testimony was detailed and lasted over an hour. The gang testimony adduced at trial provided support for the prosecution's theory that Martinez's motive for confronting and murdering Solis was gang related.

Martinez's argument that Detective Perez opined "on whether the sequence of events in this case amount[s] to murder" is likewise unsupported by the record. Detective Perez testified, in the abstract, that a confrontation between members of rival

9

gangs "could" result in a "range" of outcomes from "verbal altercation, physical altercation to murder." This testimony was permissible.

We likewise reject Martinez's suggestion that remand is warranted because no gang allegations were charged in this case. (*Ramirez*, *supra*, 13 Cal.5th at p. 1095 ["[Gang] evidence is admissible even when a gang enhancement is not charged, provided the probative value of the evidence is not substantially outweighed by its prejudicial effect"].)

Because we conclude the trial court did not abuse its discretion by admitting the gang evidence, we need not address Martinez's argument that trial counsel was prejudicially ineffective by not raising additional objections to various aspects of that gang evidence. If the evidence was properly admitted by the trial court, it follows logically that counsel's failure to object was not deficient. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [in order to establish ineffective assistance of counsel, a defendant must show counsel's performance fell below an objective standard of reasonableness].)

## II. The trial court did not abuse its discretion by denying Martinez's *Romero*[2] motion

Martinez next argues the trial court erred in denying his *Romero* motion. For the reasons discussed below, we reject this contention.

### A. Background

After Martinez was convicted, the prosecution filed a sentencing memorandum. Martinez moved the sentencing court

_____

2    *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

to dismiss his prior strike conviction in accordance with *Romero.* Martinez also filed a sentencing memorandum, with exhibits, including a social history report by a mitigation expert, letters of support from family and friends, and scholarly articles on the effects of childhood abuse.

At the sentencing hearing, the trial court noted it had reviewed Martinez's "fairly comprehensive sentencing memo, which included a complete personal history" and "some scholarly references to the impact an extraordinarily traumatic childhood would have on an individual such as to lessen the degree of perhaps culpability for this particular crime." The trial court thanked defense counsel for submitting the information to the court: "In particular, thank you for the report that you had prepared by the mitigation expert. I did have a chance to take a look at that social history, and it looks like it was pretty horrendous." Later in the hearing, the court praised defense counsel, saying:

> Ms. Haigwood, you submitted a very comprehensive mitigation package. I don't really see these that often, so I was impressed by it. It has an entire personal history. You've included dockets from family members who were convicted, or were sentenced to crimes in support of the circumstances that Mr. Martinez may have been facing over the course of his young life.

The court also remarked: "Mr. Martinez in court also presents as very courteous, and not a problem, whatsoever. And I know his mom was here the whole time. And I have a distinct recollection about the circumstances of the trial."

The court noted Martinez was 27 or 28 years old when he committed the crime, and was therefore not a youthful offender.

11

The court also stated the *Romero* motion noted Martinez was intoxicated during the commission of the prior strike offense.

During the hearing on the *Romero* motion, the prosecutor acknowledged Martinez "did have a very difficult upbringing" and faced "major obstacles in his life." The prosecutor also conceded Martinez's "issues with drugs and alcohol" were "a part . . . of this case" that "maybe" justified mitigation of the sentence.

Before imposing sentence, the court stated it would not dismiss the prior strike conviction, but that it would nevertheless reduce Martinez's sentence:

> The court did find there were aggravating circumstances. As a matter of fact, the jury found beyond a reasonable doubt that there were aggravating circumstances.
>
> I've had a chance to review the mitigation package, and [ ] I do see that there are some mitigating circumstances surrounding Mr. Martinez, his personal history . . . .
>
> Having said that, this court will decline to exercise its discretion under *Romero* to strike that prior strike conviction. However, I am going to utilize some of that mitigation, as it's empowered by this court, to give him the non 25 to life sentence on the firearm.

The court thus imposed 10 years instead of 25 years to life on the firearm enhancement.

After imposing sentence, the court further explained the reasons for its sentencing choices:

12

Mr. Martinez's sentence obviously is extremely heavy, but it is keeping in mind the nature of this particular conviction, his previous history, which includes a number of prior convictions.

I have to tell you, Mr. Martinez, this court is not a soft court. This court will sentence you to very, very harsh terms. I'm giving you a break on that 25 to life count, because your attorney put together a very compelling package, that's why I'm not imposing an additional 25 years to life.

Later in the sentencing hearing, the court asked Martinez if he had any questions about his appellate rights. Martinez replied, "No. I was just wondering why you didn't strike the strike?" The court answered, "Mr. Martinez, this court has a certain amount of discretion[,] . . . [to] utilize . . . prior criminal history and [ ] the length between the convictions."

### B. Applicable legal principles

A trial court must make its decision to strike or not strike a prior conviction by considering factors that are intrinsic to the Three Strike law's sentencing scheme. (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) The factors a trial court must consider include: (1) the nature and circumstances of the current conviction; (2) the nature and circumstances of the prior strike conviction; and (3) the defendant's "background, character, and prospects[.]" (*Ibid.*) If the defendant falls outside the spirit of the Three Strikes law, the court may, in furtherance of justice, treat the defendant "as though he had not previously been convicted of one or more serious and/or violent felonies." (*Ibid.*; see also *Romero*, *supra*, 13 Cal.4th at pp. 529-530; § 1385, subd. (a).) We

13

review a trial court's denial of a *Romero* motion for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373.) As mentioned in our discussion of the gang evidence admitted at trial, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

### C. Analysis

We reject Martinez's argument that the denial of his *Romero* motion was an abuse of discretion. The record does not suggest, as Martinez contends, that the court was unaware of or disregarded relevant mitigating factors in making its ruling. Rather, the record shows the court balanced the relevant factors. The court reasonably concluded, in light of Martinez's current offenses, criminal history, and character/prospects, that he posed a danger to society and thus fell within the spirit of the Three Strikes law. (See *Williams*, *supra*, 17 Cal.4th at p. 161.)

The record reasonably supports the trial court's conclusion that Martinez fell within the Three Strikes law. Martinez's adult criminal history began in 2012 and continued up to the murder of Solis, as well as after the murder when Martinez evaded police in a car chase. Martinez sustained his prior strike offense, a conviction for residential burglary, in 2013. He was also convicted of reckless driving (Veh. Code, § 23103) in 2018, and he had an open case for two counts each of looting (§ 463, subd. (a)) and burglary (§ 459) alleged to have occurred less than a month before the murder of Solis. In that case, it appears Martinez was ultimately convicted of second-degree burglary.

In other words, the record demonstrates that, over the eight years preceding Solis's murder, and in the months afterward while he remained at large, Martinez repeatedly failed

14

to follow the law. (*People v. Gaston* (1999) 74 Cal.App.4th 310, 321 [remoteness of prior strikes not significant in view of defendant's lengthy criminal history].) The record does not show Martinez lived crime-free in the community for any significant period of time. Rather, Martinez sustained his first conviction in 2012, committed his first strike offense less than 18 months later, and suffered two misdemeanor convictions in between. For his first strike offense, Martinez was sentenced to four years in state prison, which corresponds to the only significant break in his criminal behavior. Upon his release from prison, he continued his involvement in crime until he was incarcerated in the instant case. Based on Martinez's prior criminal history and recidivist behavior, the trial court could reasonably conclude he fell within the Three Strikes law.

We reject Martinez's argument that the trial court abused its discretion by focusing solely on the current offense, to the exclusion of other relevant factors. As discussed above, the record shows that other relevant factors supported the trial court's ruling on the *Romero* motion.[3] The trial court *did* discuss some of these other factors in denying the *Romero* motion. For example, when pronouncing judgment, the trial court said that *in addition*

---

3    To the extent Martinez suggests the trial court erred by not explicitly discussing every potentially relevant factor in denying the *Romero* motion, we are not persuaded. "While a court must explain its reasons for striking a prior (§ 1385, subd. (a); see *Romero, supra*, 13 Cal.4th 497, 531), no similar requirement applies when a court declines to strike a prior [citation]." (*In re Large* (2007) 41 Cal.4th 538, 550.) "'The absence of such a requirement merely reflects the legislative presumption that a court acts properly whenever it sentences a defendant in accordance with the [T]hree [S]trikes law.'" (*Ibid.*)

15

to the "nature of this particular conviction," the sentence was based on Martinez's "previous history, which includes a number of prior convictions." When Martinez asked the court to further explain its decision to deny the *Romero* motion, the court explained that its ruling was informed in part by Martinez's "prior criminal history" including "the length between the convictions."

Nor are we persuaded by Martinez's contention that the trial court improperly failed to consider mitigating circumstances regarding his background in ruling on the *Romero* motion. Indeed, the record reflects the trial court carefully reviewed all the information provided by defense counsel, thanked defense counsel for providing the useful information, and reduced sentencing on the firearm enhancement based on factors in mitigation.

For these reasons, the trial court did not abuse its discretion by denying Martinez's *Romero* motion.

## III. Senate Bill No. 81

Martinez lastly argues section 1385, subdivision (c), as amended by Senate Bill No. 81 (SB 81) (2021-2022 Reg. Sess.) (Stats. 2021, ch, 721, § 1) applies here and warrants remand for resentencing. The Attorney General counters that Martinez forfeited his SB 81 argument by not objecting in the trial court, and in any event, the argument fails on the merits. We agree with the Attorney General that Martinez's argument should be rejected on the merits.

Effective January 1, 2022, section 1385, subdivision (c)(2) states sentencing courts "shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.

Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."

One of the enumerated mitigating circumstances enacted by SB 81 is: "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).) Another enumerated mitigating circumstance is: "The enhancement is based on a prior conviction that is over five years old." (§ 1385, subd. (c)(2)(H).) Yet another enumerated mitigating circumstance is: "The application of an enhancement could result in a sentence of over 20 years." (§ 1385, subd. (c)(2)(C).) Martinez argues these three mitigating circumstances apply to his case.

We first begin by addressing the Attorney General's forfeiture argument. It is true Martinez's counsel did not raise SB 81 in the trial court, and thus this court may conclude the argument is forfeited. But we nevertheless exercise our discretion to reach the merits of whether SB 81 applies here. (See, e.g., *People v. Anderson* (2020) 9 Cal.5th 946, 962 [reviewing court may reach the merits of an otherwise forfeited claim when the alleged error affects the defendant's substantial right].)[4]

As noted above, Martinez raises three arguments why SB 81 should apply to his case. We are unpersuaded.

His first two arguments relate either partially or fully to the fact that the trial court sentenced him under the Three Strikes law. As noted above, the trial court doubled Martinez's

---

4    Because we exercise our discretion to reach the merits, we need not address the parties' substantive arguments concerning whether trial counsel was ineffective.

sentence on count one under the Three Strikes law, then enhanced it by 10 years under section 12022.53, subdivision (b). According to Martinez, because his sentence on count one was doubled under the Three Strikes law, and also consisted of the firearm enhancement, his case falls under section 1385, subdivision (c)(2)(B), which enumerates the following mitigating circumstance: "Multiple *enhancements* are alleged in a single case. In this instance, all *enhancements* beyond a single *enhancement* shall be dismissed." (Italics added.) As this language makes clear, the subdivision relates only to *enhancements*. Our Supreme Court has long held the Three Strikes law "articulates an alternative sentencing scheme for the current offense rather than an enhancement." (*Romero, supra*, 13 Cal.4th at p. 527.) Because the plain language of SB 81 applies only to enhancements, it is inapplicable to the trial court's decision to sentence Martinez under the Three Strikes law. (*People v. Burke* (2023) 89 Cal.App.5th 237, 239-240, 242-244 (*Burke*); *People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn. 2 [same]; *People v. Olay* (2023) 98 Cal.App.5th 60, 67-69 [same]; *People v. Dain* (2024) 99 Cal.App.5th 399, 411 [same].) In other words, the trial court imposed only one enhancement and thus complied with section 1385, subdivision (c)(2)(B).

For these same reasons, we reject Martinez's argument that SB 81 applies because the trial court imposed an enhancement based on a prior conviction that is over five years old. (§ 1385, subd. (c)(2)(H).) Although Martinez's prior strike was over five years old, the trial court's decision to double Martinez's sentence on count one under the Three Strikes law was not an enhancement as described in the statute. (*Romero, supra,* 13 Cal.4th at p. 527; *Burke, supra,* 89 Cal.App.5th at pp. 239-240,

18

242-244.) The sentence the trial court imposed therefore complied with section 1385, subdivisions (c)(2)(B) and (c)(2)(H).

We now turn to Martinez's third argument: SB 81 applies here because an enhancement was alleged that "could result in a sentence of over 20 years." (§ 1385, subd. (c)(2)(C).) As discussed previously, the amended information alleged Martinez personally and intentionally discharged a handgun, proximately causing great bodily injury or death. (§ 12022.53, subd. (d).) The sentence for that firearm use allegation is 25 years to life. (*Ibid.*) The jury found that allegation true. But the amended information also contained a separate allegation that, in the commission of the murder, Martinez personally used a firearm within the meaning of section 12022.53, subdivision (b). The jury found that allegation true as well. The sentence for that allegation is 10 years in state prison. (§ 12022.53, subd. (b).) At the sentencing proceedings, based on mitigating circumstances, the court dismissed the 25-years-to-life firearm enhancement (§ 12022.53, subd. (d)) and instead imposed a 10-year firearm enhancement under section 12022.53, subdivision (b).[5] Because the court

5 Although it appears the trial court misspoke at the sentencing hearing and stated it was imposing the 10-year firearm enhancement under section 12022.5, the abstract of judgment correctly reflects the court imposed the 10-year enhancement under section 12022.53, subdivision (b). Additionally, after Martinez's sentencing hearing, our Supreme Court clarified that, after a trial court strikes a section 12022.53 enhancement, it may impose a lesser included, uncharged enhancement authorized elsewhere in the Penal Code. (*People v. McDavid* (2024) 15 Cal.5th 1015, 1021 (*McDavid*).) In light of *McDavid*, it appears the trial court could permissibly impose the 10-year firearm enhancement either under section 12022.5, subdivision (a) or under section 12022.53, subdivision (b).

dismissed the 25-year-to-life enhancement, and instead imposed a 10-year firearm enhancement, section 1385, subdivision (c)(2)(C) does not apply to Martinez's case.

In summary, none of the provisions of SB 81 Martinez cites applies to his case.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, P. J.

We concur:

COLLINS, J.

MORI, J.

20